Good morning. May it please the court, Laurie Barrist, Assistant Federal Public Defender on behalf of Joseph Poignant. The first issue before the court this morning is whether the government has proven beyond, by a preponderance of the evidence, that Mr. Poignant failed to participate in his sex offender treatment program, and that turns on the definition of the word participate. The second issue before the court is whether the district court erroneously defined participation to mean compliance, thereby finding Mr. Poignant guilty of something he was not charged with and had no opportunity to defend against. The petition for supervised release violation charged that Mr. Poignant failed to participate in his sex offender treatment program, as evidenced by the April 23rd letter of unsuccessful discharge, but the government did not introduce that letter at the evidentiary hearing before the magistrate judge or the final hearing before the district judge. At the conclusion of the evidentiary hearing, the magistrate judge discussed the problems that she was having with the government's presentation of the evidence. Didn't the district court read out loud from the letter during the hearing, the revocation hearing? He basically or she read the letter. There were a couple of words that weren't quite right. He did read the letter, but we're at the evidence. So it's in the record. It is in the record. Okay, by virtue of the verbal. Yes. Okay. Anyway, at the conclusion of the hearing, she said, the magistrate judge, that she was struggling with the government's proof, because she said that obviously he was discharged due to unsuccessful compliance based on the things the doctor described. But at the same time, the doctor testified that he was in an intensive program. He was going twice a week to group, twice a week to individual. He was disclosing, maybe not fully disclosing, taking polygraphs, participating. She said, it doesn't say complying. It doesn't say successfully complying. But I'm struggling with the condition being failure to participate, and it sounds like he was participating. Ironically, that is exactly what he was doing when he got kicked out of the group session on April 16th. And he was sitting in his car talking to his probation officer, waiting for the next group session to begin, when Dr. Gollar, the therapist, told him if he didn't leave the premises, she would call the police. The magistrate judge was not the only one struggling with whether the charge had been proven. The district court, after reading the report and recommendation, and the objections to the report and recommendation, was unclear as to whether the charge had been substantiated. So he ordered a copy of the transcript. He was still unclear because, as he said, the allegation references a letter of discharge, but I didn't have a letter of discharge as part of the record. Then he said, only after reading the noncompliance letter, and frankly, not until then, did it become apparent that the violation was proved by a preponderance of the evidence. But no one had relied on the letter or its contents. The government did not introduce it at either hearing. The letter is in the record. He read from it and read the letter in the record. We know what the letter says. And also, Gollar testified to exactly what's in the letter. So we have her testimony as well. Correct? Everything is in the letter Gollar testified to. Not exactly. There was three new allegations in the letter. She did testify about the polygraphs, and she did testify about that he had become verbally aggressive to her. But with regard to the other- I thought she testified about how he got loud and wouldn't participate in the last group session. He got angry. Yes, but that- She testified about all that. Yes, but she didn't testify about his poor emotional regulation, that he did not come prepared with his weekly assignments, that within the treatment setting, he has poor effective regulation and decision-making. Those three things were not discussed during the evidentiary hearing. But they were in the letter, right? They were in the letter. And it wasn't contradicted at the hearing. Your client didn't testify. I'm not suggesting he should have. Are we talking about the final hearing or the first hearing? The final hearing. The final hearing? No, he wasn't given an opportunity to. When you look at the record at DE 152.5, the district court comes in. He reads, he says that stuff about that he was unclear, so he ordered the transcript, and not until he got the letter did he realize the violation has been proven. He reads the letter in, and he says, okay, you're guilty. Let's proceed to sentencing. So obviously this letter was not part of the record until then. Did anyone object at that point? No, did not. Anyways, that letter, the magistrate was saying that she didn't have it or else she wouldn't have said he's not charged with complying. It doesn't say successfully complying, but that is exactly what the letter said, that he is being discharged for his failure to comply with treatment. And then that letter, like I told Judge Hull, listed the five areas of noncompliance, three of which were new to this hearing. Is your argument that he was actually in compliance or that the government didn't appropriately prove that he wasn't in compliance? Because those are two different arguments. Government didn't appropriately prove that he was in compliance. He was not charged with compliance. He was charged with participation, and there's two different definitions of participation and compliance. Isn't participation something that a judge could interpret in different ways? There's a large scale of that, right? He could say, if he went to the first session for five minutes, he could say, well, I participated, and some people might think that was enough, or others might require that he participated, crossed every T and dotted every I the entire time to conclude that that's participation. Isn't this something where the discretion of the district court has a lot of relevance? Yes, you're correct with that, but there is no definition of participation, really. When you look at the... There's a case from the Middle District, which we know what participation isn't. We know that it's not passive attendance at counseling sessions or mere submission to treatment. That's from the Heard v. Crosby case, which is clearly not Mr. Poignant, who was going to his individual sessions twice a month, group sessions twice a week, taking polygraphs, actually trying to participate when he got kicked out. And we also know that it's not like the Tenth Circuit's Metzner case, where that defendant decided to stop participating on his own, and he just didn't show up right before the end of his treatment session. Because we don't have a definition of participation, courts look to the plain, ordinary meaning. We can look into a dictionary to see that participate means to take part, engage. Well, what if he, in fact, violated several requirements of the participation agreement, which he had signed? Wouldn't that be sufficient? If the government had alleged... Well, I thought, and you can help me if I've got this wrong, that among the violations the record established, the record established, was one, he went for rides on the beach, which was a self-identified risky environment. He had agreed not to do that. They told him to stay away from the beach for a variety of reasons. Two, he failed to control his anger at the meeting, became verbally aggressive. Three, he remained in the parking lot after he was directed to leave. Four, he was deceptive in his polygraph examinations regarding viewing adult pornography. And five, he lied about access to the Internet. I thought those were alleged and those were established at least to the satisfaction of the district court. If that's the case, why would there not have been a sufficient foundation for the court to have done what it did? Well, I think that the last one was not established, the access to the Internet. That was not charged and there was no ruling that he had improper access to the Internet because he was allowed to access the Internet with the permission of his probation officer. What was that, all the evidence that came out of that? He accessed some adult pornography sites on the computer. He'd gotten it from his girlfriend. Was that not part of this record? Just help me with the facts. Well, I don't think that was part of this violation. It was part of the last two violations, which was in 2011 and 2015. But what about the contracting of the agreement to avoid risky areas like the beaches and bars, avoiding adult and child pornography, failing to follow the contact information and stuff like that? What do you mean contact information? Well, wasn't he supposed to? Well, there was a three-step strategy to control anger. What about all of those facts? Weren't they evident in this record? Not the child pornography. There was nothing about that. No, I didn't say child. I said adult pornography. I thought you said child. There was no evidence established with regard to this violation that he actually viewed adult pornography on the Internet. There was no evidence with that. The evidence was that he was deceptive with regard to whether he had viewed it on the polygraph. What about the avoiding risky areas like the beach, not controlling the anger, being aggressive at the meetings, et cetera? The only time he became aggressive and cursed was when the treatment provider told him to leave. That was established by the record. As far as controlling his anger, you're correct, but that's why he was there to begin with, to learn to control his anger. The claim that she made was that he didn't, that he didn't control his anger. Don't misunderstand what I'm saying. I might have viewed it differently as a trial judge. I'm simply asking whether or not there's enough record evidence to support the trial court's determination here. Obviously, I'm going to say no. Well, I want you to tell me why not. He wasn't supposed to go to the beaches. He did that, right? That's a square violation of the agreement, wasn't it? Right. We know that he went. And Golar testified that he told her that. I mean, he is from his own statements to Golar. Right, but he went there once. They don't have any evidence that he ever went there after she cautioned him not to go back there again. So your answer is it violated the agreement on one occasion, and, boy, that's kind of de minimis. And I might agree with you, but the district judge didn't. I know. So how do I say there's error in that finding? Because the charged violation of failure to participate was not proven. What they proved, perhaps, was failure to comply with the conditions, but there's two different . . . But doesn't that ignore that his participation, there was an ITP contract. Yes. So that set forth what the participation was to be. Okay, you're relying on the literal reading of the probation, I guess the supervised release . . . Petition. Petition. Yes. Okay, but he had a specific signed contract, the ITP contract, correct? Yes, which was never used. And it had various conditions, that he had to use the three-part strategy in the sessions to manage the anger. He did not use the three-part strategy in that last session. Because that was when his mother . . . It was the anniversary . . . We understand why. We're talking about whether he, in your terms, this is all about participation or compliance. Correct. And it seems like the contours of participation here were set forth in the ITP contract. That was a participation contract, right? Yes, but it was never introduced into evidence, and that's where . . . Well, but she talked about exactly what the contract . . . The goaler testified what were the terms in the contract, right? Correct. And the anger . . . She set forth that. And he also showed deception as to whether or not he'd watched pornography. They took a polygraph, and he showed deception in the answer. I'm like Judge Marcus. I don't know that I would have revoked . . . I don't know what I would have done 24 months or what I would have done here. But this whole thing that there's no evidence . . . Well, insufficient . . . . . . that he failed to participate seems not right to me. Well, I would say insufficient evidence . . . Uh-huh. . . . . . . to prove that he violated the term of his participation. And that Menstner case, just to go back to that for a second, out of the Tenth Circuit, which is the only circuit that I could find, said that the participation does not have to be 100%. It should be substantial. So in our opinion, it was substantial, and we'd ask that you vacate the district court order. We've got it. And you've reserved three minutes. You'll have the full time for rebuttal. Thank you. Good morning, Your Honors. Good morning. Andrea Hoffman on behalf of the United States. The summons that was issued in this case, the violation reads that the defendant specifically failing to participate in a sex offender treatment program, and then it incorporates directly by reference. On or about April 23, 2018, the defendant was unsuccessfully discharged by reach, full title, as evidenced by a letter of unsuccessful discharge from treatment of that same date. So the letter of noncompliance . . . Excuse me. The letter of noncompliance of April 23, 2018, was directly incorporated into the notice of violation. That's the discharge letter we're talking about now? Yes, sir. It was attached to the petition? It was incorporated by reference to the face of the petition, the actual violation. It was quoted in the petition? Yes, sir. Ma'am, excuse me. And it was then . . . I'm talking about the discharge letter. It is not clear when the district court got it. It is clear that all parties had it before the hearing in May, as is evidenced on page 57, when defense counsel recognizes that he had read the letter and he gives his description of what occurred in that letter. The district court clearly didn't . . . The reason I raise it is you need that letter, don't you, to establish your claim? I don't think we do need the letter. The reason I raise it is when I looked at the record here, the district court said that once he had seen the letter, it became apparent that the government met its burden. The district court said, quote, if this charge did not make reference to the discharge letter, then I would agree with you. This is what he's saying to counsel for the defendant. But if you take the charge and you look at the letter, which is referenced in the charge, then it became . . . And frankly, not until then, it became apparent to me that the violation was proven by a preponderance of the letter. So at least as far as the district judge was concerned, that letter was pivotal. I would agree with you. That's a fair statement, isn't it? I think it is a fair statement, Your Honor. The district court found the letter to be extremely persuasive on its face, particularly when corroborated by, as Judge Hull has described, the extensive testimony by . . . Oh, because I say then the defense counsel pointed out that it was in possession of the discharge letter but did not have the letter at the time of the revocation hearing. If you look at page 57 of the revocation hearing, the defense counsel discusses the letter and his interpretation of what that letter meant. I think there must have been a misstatement when he said that to the district court, Your Honor, because . . . You mean at the time of the final revocation hearing? At the final revocation, he must have misspoken because in the magistrate judge's hearing at page 56 and 57, you can see the defense counsel had it because he gave a different characterization of what that letter is. He wanted that letter to be interpreted as a summary of only the events that occurred on April 16th. So he clearly read the letter before the magistrate's hearing. Just so I understand that, the letter was not in the record before the district court other than insofar as it was read into and alluded to, but the actual physical copy was not filed with the district court, right? Correct. So the only time it comes into the record physically is when it was filed unto seal in this court. Physically a copy of the whole letter, yes, other than the reading of the letter into the record on page 6 of that. Did they read the whole letter or just a piece of it? The court did not read the last sentence roughly, which is a summary sentence about maladaptive behaviors adding to the risky circumstances that can create a future failure by this defendant. So that sentence did not get read into the record, Your Honor. And there is, as Judge Hull recognized, small word changes as the court read it. It didn't read it literally verbatim, but it read every one of the allegations are correctly read by the court. And the court amplified in the middle of it because the court had already expressed concerns about the fact that there had been three deceptive polygraphs between 2017 and 2018. And so the court referenced that his prior discussion of his concern as he was reading it. So he interjected something in the middle of it. But other than that, it was read in. Now, when you take the court, the magistrate court gave after the discussion that defense counsel reviewed with this court about the magistrate's concerns. When it issued its R&R, the magistrate judge gave a definition of participation that included more than mere presence or more than passive presence or mere submission and said that participation required complying with the rules of the program that you have been administered to. And in this case, those rules come out in two different ways. It comes out in the ITP, which this defendant signed, and it comes out in the handbook, which this defendant was given. And the rules are designed specifically for this defendant to control his urge control issues, his maladaptive behaviors, as they've described a number of times, and his anger management issues, as well as all of the various slippery slope issues on the sex offender program itself. It's undisputed that this defendant had multiple deceptive polygraphs, that he went to places that he personally had self-identified. When Dr. Galler talks at the original hearing and she gives a summary of vulnerable victims and why the beaches and bars and these sorts of things are risky or dangerous issues for this defendant, she's reading his own words from his Step 5 portion of his ITP contract. And this defendant himself identified these places as his set-ups or his red flags or his triggers, depending on which one of the words you want to use, for starting on his offense cycle. And as Dr. Galler explained, offense cycles are connected. If the defendant gets away with inappropriate behaviors, particularly a sex-offending defendant, gets away with inappropriate behaviors in one component, it emboldens him to keep trying inappropriate behaviors in other areas. It emboldens them to fantasies, too, things that are even farther afield. And so that's why this risky behaviors issue is so critical. Is there something illegal about going to a bar? No, not per se. But in this case, for this defendant, with two prior violations for all of the same behaviors, including, as Judge Marcus noted, the computer access, in which there's significant deception between his information provided to his treatment providers and to the probation officer, the story changes throughout for what the kind of computer access is. As Dr. Galler testified, truthfulness and self-awareness are critical components to completing and participating in a sex offender treatment program. And this defendant willfully chose to do neither. As far as Dr. Galler is concerned, he's aware of the choices that he's making and consciously making the wrong choices. And for those reasons, that qualifies as not participating in the program. As I understand it, his projected release date is April 20th. Is that correct? Ms. Barris confirmed to me this morning that he is due to get out in approximately a month from this service. Okay, that's why we expedited it and got added to the calendar because of the release date. Yes, ma'am. The sentence was 10 months in prison and a supervised release term of 20 years? Yes, sir. If there are any further questions that I could amplify for the court, I would be happy to. Thanks very much. Thank you. Just a couple of corrections. It is disputed. Reference the polygraphs. There were no three deceptive polygraphs. There was one in April 2017 and there was one in April 2018. That was two, not three. The district court did not have the letter until, as he said, a few days ago, which was a few days before June 26th when he had the evidentiary hearing. Finally . . . Counsel for the defense have the letter at the time of the hearing before the magistrate? I would say yes because on page 57 of the evidentiary hearing, he references a letter. I can't say that that is the same letter because the letter was never introduced by the government at either hearing and when Judge Graham specifically asked him, did you have a copy of the letter? He said, I have a copy, but I didn't have it at the evidentiary hearing. So I'm just a cold record counsel. I'm assuming . . . But from the record itself, it would be fair to reach that inference that they were talking about that letter rather than something else. He references a letter. I don't know if it's the same letter, but you could assume maybe that it is. But in any regard, the letter itself does not even mention anything at all about him getting kicked out of the program or from the group session or anything like that. It doesn't mention it at all. And with regard to the new violations, the defendant has a right to notice and a hearing on each violation and to present contrary evidence. The government was not proceeding on three of those allegations that were in the letter, and yet he was found guilty of it. So we just ask that since he was found guilty of something that he was not charged with and had no opportunity to defend against, that you would vacate the district court order and allow him out for his one remaining month.  Thank you, counsel. And we'll move on to . . .